FILED - GR
05 FEB 18 AM 11: 13

CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT MICH
BY:_____

IN THE UNITED STATES' DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
GRNAD RAPIDS DIVISION

| | |
|---|---|
| CHUKWUMA E. AZUBUKO - ) <br> Plaintiff ) <br> ) <br> vs. ) <br> ) <br> MASSACHUSETTS' SUFFOLK SUPERIOR ) <br> COURT AND ) <br> ) <br> UNITED STATES - ) <br> Defendants ) | CIVIL ACTION NUMBER: <br> **1:05CV0128** <br> Richard Alan Enslen <br> U.S. District Judge <br><br><br><br> **COMPLAINT** |

### COUNT ONE

The Plaintiff prayed the Defendants to refrain from wasting much-needed individual and collective time motioning for dismissal of the case for lack of jurisdiction under the color of the Fed. R. Civ. P. 12. The Court had subject-matter and specific jurisdiction; in short, the Court had general jurisdiction. Excerpts in that regard read thus:

"In a given case, a federal district court must have at least one of the types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 USC Section 1331; or (3) diversity jurisdiction pursuant to 28 USC Section 1332(a). *See Klein v. Drexel Burnham Lambert*, 737 F.Supp. 319, 323 n. 11 (E.D. Pa. 1990). In this case, the district court did not have any of the three types of subject matter jurisdiction."

"In addition to the district court in the case at bar, a number of district courts in this circuit have concluded that an independent due process analysis is required in cases involving nationwide service of process provision and domestic corporations. See, e.g., *Willingway Hospital, Inc. v. Blue Cross & Blue Shield of Ohio*, 870 F.Supp. 1102, 1107 (S.D.Ga. 1994); *Duckworth v. Medical Electro-Therapeutics, Inc.*, 768 F.Supp. 822, 830 (S.D.Ga. 1991); *Cannon v. Gardner-Martin Asphalt Corp. Retirement Trust-Profit Sharing Plan*, 699 F.Supp. 265, 267-68 (M.D.Fla. 1988)."

"... The national contacts doctrine provides that in federal question cases, the court has personal jurisdiction over defendants when there is a statutory provision for nationwide service of process and defendants have sufficient contacts with United States, not the state in which the federal court sits. Federal Trade Commission v. Jim Walter Corp., 651 F.2d 251, 256-57 (5th Cir. Unit A July 1981)."

"But See Stafford v. Briggs, 444 U.S. 527, 552-54, 100 S.Ct. 774, 789, 63 L.E.2d 1 (1980) (Stewart, J., dissenting) (joined by Justice Brennan) ("Due process requires only certain minimum contacts between the defendant and the sovereign that has created the court. The issue is not whether it is unfair to require a defendant to assume the burden of litigating in an inconvenient forum...)"

"At this point, we depart from the reasoning and holding of the majority of our sister circuits. See, e.g., *Busch*, 11 F.3d at 1258 (due process satisfied when defendant resides within the United States); *Go-Video*, 855 F.2d at 1416 ("minimum contacts" with the United States satisfies due process); *Lisak*, 834 F.2d at 671 ("[T]here is no constitutional obstacle to nationwide service of process in the federal courts in federal question case"). But *see Busch*, 11 F.3d at 1259 (Garza, J., dissenting) ..."

## COUNT TWO

The next Gordian knot for the Plaintiff over the case would be establishment of non-applicability of judicial immunity. The Defendants conduct qualified for "conduct causing deprivation" to the Plaintiff thus Equal Protection and Due Process Clauses. Such conduct had been actionable! [28 USC Sections 1346(b) 1982, 1357 and 1361; 42 USC Section 1981, "Failure to Train as a Theory of Section 1983 Liability in...", 1985(3), 1986 and 1994] Excerpts associated with non-existence of judicial immunity were abound and thus:

"Judges have given themselves judicial immunity for their judicial functions. Judges have no judicial immunity for criminal acts, aiding, assisting, or conniving with others who perform a criminal act, or for their administrative/ministerial duties. When a judge has a duty to act, he does not have discretion – he is then not performing a judicial act, he is performing a ministerial act."

"The United States Supreme Court recently acknowledged that judicial corruption in Cook County, when it stated that Judge "Maloney was one of many his honest judges exposed and convicted through 'Operation Greylor", a labyrinthine federal investigation of judicial corruption in Chicago." *Bracey v. Gramley*, 519 U.S. 1074, 117 S.Ct. 726 (1997)."

"When judges act when they do not have jurisdiction to act, or they enforce a void order (an order issued by a judge without jurisdiction), they become trespassers of the law, and are engaged in treason."

"Generally, judges are immune from suit for judicial acts within or in excess of their jurisdiction even if those acts have been done maliciously or corruptly, the only exception being for acts done in the clear absence of all jurisdiction. *Gregory v. Thompson*, 500 F2d 59 (C.A. Ariz. 1974)."

"There is a general rule that a ministerial officer who acts wrongfully, although in good faith, is nevertheless liable in a civil action and cannot claim the immunity of the sovereign. *Cooper v. O'Conner*, 99 F.2d 133."

## COUNT THREE

The case associated with an accident in January 1985. The Plaintiff was about to leave a building under the management of the Yoram Property Management, Needham, Massachusetts located at 1505 Commonwealth Avenue, Brighton, Massachusetts and the main glass door exploded. Unfortunately, a piece of the glass was about to land on the Plaintiff's head, but the Plaintiff instinctively moved his head backward and the glass piece fell on the Plaintiff's jaw. Blood started oozing and 911 was called. The Plaintiff was rushed to a nearby St. Elizabeth Hospital, Brighton, Massachusetts. Speaking under subject to correction, Yoram did not even settle the hospital bill. The Plaintiff returned to the scene, but the main door was coded. The Plaintiff strove to gain access to the building to get necessary information about the property's owner, but to no avail. That caused the filing of the case after the so-called Massachusetts' discriminatory statute of limitations ran out hence the dismissal of the case in 1997. It should not be so! The Plaintiff suffered *natural frustration* and that would have mitigated the questionable three-year statute of limitations.

## COUNT FOUR

Evidently, there were deprivation of Equal Protection and Due Process Clauses; there was a palpable and blatant *obstruction of justice*. [18 USC Sections 1-3] The Plaintiff filed claims for pain and suffering in 1997 with the Massachusetts' Suffolk Superior Court and captioned: "*Azubuko v. Yoram Management, Inc.*, et al. No. 97-6210-B). The Plaintiff timeously argued that statute of limitations should not be basis for denial of justice. Characteristically, it was like water on the back of a duck to the first Defendant. The Plaintiff had submitted motions, as recently as last year for the first Defendant to vacate or re-open the case, but the first Defendant did not see the rationales

to ensuring that "justice would be done and be seen to be done." What justified "… justice for all,…" maxim central to the Defendants' actions? Could it be more cry and less wool?

### COUNT FIVE

Furthermore, the case was equally filed with the second Defendant at the United States' District Court, District of Connecticut. It was captioned: "*Azubuko v. Yoaram Management, Inc.*, et al. No. 00-1678-SRU (D. Conn. 2000)." Immediately, the Plaintiff argued that the dismissal of the case on the basis of *statute of limitations* and *lack of jurisdiction* markedly deviated from prevailing precedents.

### COUNT SIX

Taking everything into account, the first Defendant exposed the Plaintiff to *de jure* or intentional judicial discrimination and "*injury of law*." At state and federal courts, the so-called judicial standards the Plaintiff was condemned to were not prevailing. The pig would not fly at one instance and would not fly at another instance. The saga of the Roman Catholic Priests and Altar Boys saga did not lend themselves to the first Defendant's so-called God-sent basis for dismissal. Additionally, the recent Supreme Court ruling negatived the second Defendant's *ratio-decidendi* too. [*Republic of Austria v. Altmann* (03-13) 327 F.3d 1246, affirmed] [Exhibits 1-2] When two or more individuals were similarly situated and were not treated in the same manner/s, discrimination attached. Upon attachment, the law was breached!

### COUNT SEVEN

The Defendants action underscored the definition of *negligence*. Harper, James and Gray, "The Law of Torts," Second Edition and Volume 3 Section 16.1 defined negligence in keeping with the Restatement of Torts, thus:

"Conduct which falls below the standard established by law for protection of others against unreasonable risk of harm. State of mind of indifference or inadvertence mental quality requirement must be met. Negligence resulted from ignorance, stupidity, bad judgment, timidity or forgetfulness. Negligence resulted from deficiencies in knowledge, memory, observation, imagination, foresight, intelligence, judgment, quickness of reaction, deliberation, coolness, determination and courage. Constitution of negligence must reflect "voluntary" conduct – conscious manifestation of the actor's will. Knowing that one's conduct involved a substantial chance of injuring person or property of others."

## COUNT EIGHT

The Defendants' conduct was associated with 42 USC Section 1983 in the passing. It needed to be particularized upon. Excerpts in that respect read thus:

"Title 42 USC Section 1983 has developed to the point that it provided a remedy for the violation of federally-protected rights by governments and its employees. That was not always the case, however. Enacted in 1871, the statute fell into almost a century of disuse, as the Supreme Court construed its reach very narrowly. See Civil Rights Cases, 109 U.S., 3, 3 S. Ct. 18 (1883). Then, in 1961, the Supreme Court issued its landmark decision of Monroe v. Pape, 365 U.S. 167, 81 S. Ct. 473, (1961) in which Justice Douglas, writing for the majority, determined that the policy behind the statute was "to afford a federal right in federal courts because ... claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by state agencies." 365 U.S. at 180. Monroe thus signaled the resurrection of Section 1983, and the role and influence of the federal courts in enforcing civil rights and liberties has never been the same since."

"The Supreme Court granted certiorari to consider the applicable standard for proving liability based on a failure to train theory. First, the court cited to its reasoning from Monell and its progeny that "it is only when the 'execution of the government's policy or custom ... inflicts the injury' that the municipality can be held liable under Section 1983." 489 U.S. at 385, quoting Springfield v. Kibbe, 480 U.S. 257, 267, 107 S.Ct. 1114, 1119 (1987) (O'Connor, J., dissenting). After acknowledging that "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under Section 1983," the court held as follows:

"the inadequacy of police training may serve as the basis for Section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."

## COUNT NINE

The Defendants knowingly obstructed justice. [1st Amendment; Fifth and Fourteenth Amendments] They equally abused their discretion! [*Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991); *Johnson v. A.W. Chesterton Co.*, 18 F.3d 1362, 1366 (7th Cir. 1994)]

## COUNT TEN

The Defendants' conduct lent themselves to "tacit agreement." [*Santiago v. City of Philadelphia*, D.C. Pa. 1977, 434 F.Supp. 136. Their condescension under the color of administration of justice meant "specific acts of collusion," "overt acts – generally," "injury to person – generally," "independent illegality," intentional act," "malicious

aforethought" and "malice in fact." Precedents abound in that regard. [*Harrison v. Common*, 279 Ky 510, 131 S.W.2d 454, 455; *Lyons v. St. Joseph Belt Ry. Co.*, 232 Mo.App. 575, 84 S.W.2d 933, 944; *Wiser v. Reisner*, D.C. Wis. 1970, 318 F.Supp. 580]

## COUNT ELEVEN

The first Defendant's hypocritical law thus "statute of limitations" exposed the Plaintiff to the injury of law. Under the Massachusetts' General Law Chapter 260, there existed three-year statute of limitations for injury. The same statute provided that lending and borrowing statute of limitations would be 20 years. Was that Equality Protection and Due Process Clauses? It looked like proportionate protection law – one standard for Mr. A and another for Mr. B. The financial institutions were *over-protected*! Surely, their representatives had the money to buy over the lawmakers hence they enjoyed the longest statute of limitations. They got more than rape victims, statutorily! [Exhibit 3] That was palpably unconstitutional, unconscionable and queer. It crassly violated the law! [42 USC Section 1981]

The Plaintiff would demand compensatory and punitive damages from the first Defendant in the amount of $2m – judicial discrimination and discriminatory legislation. The first Defendant should also vacate the case it wobbled over expeditiously. For the second Defendant, the Plaintiff would demand compensatory damages in the amount of $3m. In all, cost and interest would be excluded. If need be, the Defendants allowed trial to prevail despite the strict liability nature of the case, the Plaintiff would demand jury trial.

_____
CHUKWUMA E. AZUBUKO,
Pro Se,
P. O. Box 1351,
Boston – MA 02117-1351.
Telephone: (617) 265 6291.

**Dated in Boston – Massachusetts – Saturday – January 29th – 2005.**